Lane v. State.

---

## WILLIAM A. LANE v. THE STATE.

| 49 | 673 |
| 58 | 239 |
| 49 | 673 |
| 58o | 528 |

1. The act entitled "A further supplement to an act entitled 'An act constituting courts for the trial of small causes,'" the provisions of which have relation to criminal procedure, is unconstitutional, the title being misleading and not in compliance with art. 4, § 7, ¶ 4 of the constitution, which requires the object of every law to be expressed in its title.

2. It is not extortion for a justice of the peace to ask or demand from the complainant in a criminal case, at the time the complaint is made, the statutory fees for his services.

3. A justice of the peace cannot lawfully refuse to perform his duties as a conservator of the peace unless his fees be first paid.

On error to the Supreme Court.   For opinion of the Supreme Court, see 18 *Vroom* 362.

For the plaintiff in error, *R. B. Seymour.*

For the state, *C. H. Winfield, prosecutor of the pleas.*

The opinion of the court was delivered by

KNAPP, J.   The plaintiff in error was convicted in the Hudson Quarter Sessions on an indictment charging him with taking, as justice of the peace, a fee to execute and do his duty and office such as is not allowed by the laws of the state and contrary to the twenty-third section of the Crimes act.   The judgment was removed to the Supreme Court and was there affirmed, and thereupon this writ of error was brought.   The bill of exceptions shows that the plaintiff in error, on issuing a warrant for the arrest of a person charged before him with a misdemeanor, took from the complainant, for his services, the fees prescribed by law.   The trial judge instructed the jury that such fees were due to a justice of the peace only after conviction of the party charged, but that he could not be convicted of extortion unless he demanded the fees received by him from the party making the complaint, because of the provisions of the second and third sections of an act approved April 6th 1871.   *Rev., p.* 565.   The second section providing that "no fees be demanded from parties applying to justices of the peace for their services, but shall be paid out of the funds of the county in which said services were rendered;" and the third section, that upon payment being made to the justice by the county collector "said justice shall refund to the complainant so much of said costs as shall have been paid by the complainant to said justice."   That he might take the fees if they were offered to him.   The Supreme Court agreed in this interpretation of the act of 1871, and affirmed the judgment.   We think no criticism can be made upon the construction given to this act in the trial court and in the Supreme Court, but the question is here raised as to the consti-

tutionality of that act of 1871, and we think the grounds upon which this attack is made are wholly tenable. Its title is "A further supplement to an act entitled 'An act constituting courts for the trial of small causes.'" Most of its provisions relate to the fees of justices of the peace as public magistrates, and the fees of constables in criminal cases; indeed, the entire act has relation to criminal procedure.

The powers of justices of the peace, as public magistrates, had their existence essentially as now long before the act constituting courts for the trial of small causes was enacted. It has been the habit from early times to confer upon such officers jurisdiction in certain civil causes, and in the act of March 15th, 1798 (*Pat. L., p.* 318), constituting courts for the trial of small causes, a well-defined civil jurisdiction, with prescribed modes of procedure, was established, and justices of the peace *ex officio* are constituted the judges. And a review of all their judgments was to be had in the civil courts.

None of the powers exercised by justices of the peace in criminal matters are derived from, or in any way regulated by the provisions of that act, and the title chosen by the legislature for the act in question would not serve in any way to indicate a purpose by the law to legislate in respect to these officers as conservators of the peace. Their duties are to arrest, examine, commit, or to bail, and that in all criminal cases. No case of a criminal character is before them to hear or to try. This title is misleading, and not in compliance with paragraph 4 of section 7 of article 4 of our constitution, which requires the object of every law to be expressed in its title. This enactment, then, can have no effect in determining the correctness of this judgment.

The conviction, if supported, must then rest on the correctness of the instruction to the jury that it is criminal extortion in a justice of the peace to ask or demand from a complainant in a criminal case, at the time the complaint is made, payment of the fees fixed by law for his services. It has been the uniform practice in this state to pay these officers by established fees for specified services performed. As early as

1747 and 1748 an act was passed in the colonial legislature entitled " An act for the better enabling the judges and justices of this colony to ascertain and tax bills of costs, and for making provision by law for the payment of the services of the several officers of the colony, and for preventing of said officers from taking exorbitant fees." *Nevil's L., p.* 338. This enacted " that the justice's fees, in or out of sessions, shall be as follows : Every warrant of appearance, one shilling ; taking every recognizance, eighteen pence ; a pass, ten pence ; a *mittimus*, one shilling ; taking examinations, each sheet one shilling." This act was repealed by an act passed June 13th,. 1799, entitled " An act to regulate fees." *Pat. L., p.* 418. This act provided for the fees of the governor, the officers of the Court of Errors, secretary of state, prerogative office, Prerogative Court, Court of Chancery, masters in chancery, clerks in chancery, commissioners' fees, fees of solicitors and counsel and sheriff ; fees of the judges and officers of the Supreme Court, of attorneys-at-law, and apparently of all the other public officers of the state, including provision for " fees. to be paid to the justice of the peace who performs the services where he is entitled to fees, and they are not otherwise ascertained by law ; " and under this falls a list of the same services specified in the last act, with the amount of fees stated in dollars and cents. The first section of this act declares what number of words in writing shall constitute a legal folio. The second section opens with a declaration that the officers and persons in this act named shall be entitled to *demand* and *receive*, for the services hereinafter mentioned, the fees thereto respectively annexed, and no more. Then follows a list of the officers above named, including justices of the peace, with an amount affixed as a fee for each specified service.

Our present fee bill embodies the provisions of the act of 1799. The only other legislation found relating to this subject is in section 108 of the Criminal Procedure act. *Rev.*, *p.* 287. This section originally formed the third section in the act of 1871. At the time of the Revision, it, with two. other sections from the same act, were re-enacted under the

appropriate title of "An act regulating proceedings in criminal causes," and stands in that place as a valid law. The second section of the act of 1871 was not re-enacted under that title. It enacts "that every justice of the peace shall make a bill of particulars of the costs in each criminal case before him, and certify and send up the same with the papers in the case to the clerk of the grand jury in his county, and, if an indictment be found in the case, said bill of costs shall be handed by him to the county clerk, who shall review and correct the same, if necessary, and shall certify the correct amount to the county collector, who thereupon shall pay the amount so certified to the justice, and said justice shall refund to the complainant so much of said costs as shall have been paid by the complainant to said justice."

Nothing is to be found in any of the provisions of law above referred to, which by express words postpones the right of the justice of the peace for services rendered by him in criminal cases until an indictment or conviction of the offender shall have been procured; nor do I think from any of its provisions is there to be inferred a design to place any restrictions upon his right to be paid fees that would not as well arise in the case of any of the numerous officers provided for in the acts of 1774 and 1798, and they embrace almost the entire body of public officers in the state, and I think it has not been suggested that any of these are debarred from claiming and demanding their fees upon the rendition of their official services.

If the long-continued practice of these officers is to be regarded as of any weight as cotemporaneous exposition of the law, it may be safely said that the practice of justices of the peace to ask for and to be paid their fees by persons instituting criminal complaints before them has been the general, if not almost universal rule. The plain design of the one hundred and eighth section of the Criminal Procedure act was to cast upon the public the burthen of the entire expense in all those cases where the grand jury found ground to indict. It gives no intimation that justices shall not be paid their fees for services

when no indictment is found, but expressly recognizes the practice of taking such fees from the complainant, and requires only when the public, under the conditions of the act have assumed the burthen of payment, that he shall repay the money to the complainant. The act certainly does not make the practice illegal, but, on the contrary, it would seem to have removed any question which might have existed of its legality. Our conclusion is that there was error in the charge of the trial court that the justice was guilty of extortion if he asked the complainant to pay him his statutory fees for performing designated duty.

In *State* v. *Maires*, 4 *Vroom* 142, and *Cutter* v. *State*, 7 *Vroom* 125, a different view was expressed by the court. The point was not raised in either of those cases for decision. In those views we are unable to concur.

It must not be inferred from this conclusion that justices of the peace may lawfully refuse to perform their duties as conservators of the peace unless their fees be first paid. The public are largely concerned in the proper performance of the duties which the law casts upon these officers, and in the language of Chief Justice Beasley, in State *v.* Maires, " the law is not so unwise as to make the enforcement of the criminal code dependent on the ability of the party injured to pay for the services of its officials, and upon a sufficient oath the magistrate is bound to proceed independent of any mercenary considerations."

But there is a well-marked distinction between the legal right of a public official to refuse to act unless he is paid, and his legal right to be paid for official services which he performs.

The judgment brought up must be reversed.

*For affirmance*—None.

*For reversal*—DEPUE, KNAPP, PARKER, REED, SCUDDER, VAN SYCKEL, BROWN, COLE, McGREGOR, PATERSON, WHITAKER. 11.